UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ISAIAH Z. SMITH,

        Petitioner,

v.                                     Case No. 2:15-CV-73
                                        HON. ROBERT HOLMES BELL

JEFFREY WOODS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner filed this § 2254 petition for a writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights.  On May 18, 2011, Petitioner pleaded guilty to second degree murder (MICH. COMP. LAWS § 750.317), home invasion in the first degree (MICH. COMP. LAWS § 750.110A2), felon in possession of a firearm (MICH. COMP. LAWS § 750.224F), and felony firearm (MICH. COMP. LAWS § 750.227b). PageID.2. Petitioner was sentenced to 40 to 60 years for the murder conviction, 8 to 30 years for home invasion, 3 to 7 years for felon-in-possession, and 2 years for felony firearm. PageID.2. Petitioner remains in the custody of the Michigan Department of Corrections (MDOC).

After his trial, Petitioner filed an application for leave to appeal to the Michigan Court of Appeals. PageID.3. The Court of Appeals denied his application and affirmed his conviction on August 22, 2012. PageID.3, 16. Petitioner did not appeal to the Michigan Supreme Court. PageID.3.

Petitioner filed a motion for relief from judgment in the Genesee County Circuit Court on September 30, 2013. PageID.4. The trial court denied his motion on January 21, 2014.

PageID.4. Petitioner appealed this decision to the Michigan Court of Appeals, which denied his motion on July 24, 2014. PageID.24.  Petitioner appealed this decision to the Michigan Supreme Court, but the denial of his motion was affirmed on April 28, 2015. PageID.26.  Petitioner did not appeal to the United States Supreme Court. Instead, he filed this habeas petition on May 15, 2015. ECF No. 1.

Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

> I. Was Defendant-Appellant's right to effective assistance of counsel under the VI and XIV Amend. to the US Const. and Mich. Const. 1963, Art. 1 §20 violated when appellate counsel failed to counsel or instruct Defendant-Appellant on procedures and deadlines for filing in the Michigan Supreme Court?

> II. Was Defendant-Appellant's plea a coerced guilty plea, caused by ineffective assistance of trial counsel that resulted in an involuntry [sic] plea and based on an illusionary offer, violating Defendant-Appellant's due process rights as established under the XIV Amend. to the US Const. and Mich. Const. 1963, Art. 1 §17.

PageID.6-7.  Respondent filed a response to the habeas petition on January 26, 2016. ECF No. 9. Petitioner filed a reply on March 17, 2016. ECF No. 11. The matter is now ready for a decision.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996.  PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are

presumed correct unless the petitioner rebuts the presumption with clear and convincing

evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

Petitioner's first claim is that his appellate counsel was ineffective when, after the

Michigan Court of Appeals issued its denial of his direct appeal, his appellate attorney failed to

tell him how or when to pursue an appeal in the Michigan Supreme Court. PageID.48. Due to

this failure, Petitioner asserts that he missed the fifty-six day deadline for filing his appeal to the

Michigan Supreme Court. PageID.48.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To

establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that

counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair

outcome.  A court considering a claim of ineffective assistance must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding

that counsel's strategic decisions were hard to attack).  The court must determine whether, in

light of the circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance." *Strickland*, 466

U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the

defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Petitioner raised this claim in his motion for relief from judgment, and the trial court denied the claim for the following reasons:

> What remains for this Court to consider are the allegations with respect to defendant's appellate counsel. Defendant alleges that appellate counsel failed to advise defendant of the procedure to be followed to get his case before the Michigan Supreme Court and requests a hearing on that issue.
>
> Once again, MCR 6.508(D) provides in pertinent part as follows:
>
>> The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>>
>> *       *       *
>>
>> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>>
>>> (a) good cause for failure to raise such grounds on appeal or in the  prior motion, and
>>>
>>> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>>>
>>> *       *       *
>>>
>>>> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;
>>>>
>>>> *       *       *
>>>
>>> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.
>
> In this case, the defendant cannot meet this burden. The defendant's testimony, given under oath at the time the plea was entered, belies the position he now takes in his motion for relief from judgment. The defendant's statement to the police following his arrest belies the position being taken by the defendant in this motion.

> There is no basis in the record to allow one to conclude that there is
> a significant possibility that the defendant is innocent of the crime.

PageID.21-22.

Respondent contends that this decision by the trial court was on the merits, even though it appears to be made on procedural grounds. PageID.139. Notably, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.") and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

In arguing the first prong under *Strickland*, Petitioner asserts that his appellate counsel performed deficiently by failing to inform him of the fifty-six day deadline for filing a direct appeal to the Michigan Supreme Court. However, the evidence Petitioner provided in his petition does not clearly demonstrate that his appellate attorney failed to inform him of this

deadline.  For example, Petitioner provided a letter ("Letter") from his appellate attorney's assistant indicating that the Michigan Court of Appeals denied his direct appeal, and that Petitioner had a limited time to file an appeal to the Michigan Supreme Court.  PageID.70.  In addition, in a separate letter, Petitioner's appellate attorney indicated that a packet of information regarding the procedure for appealing to the Michigan Supreme Court was always included with the Letter after an appellate court's denial of a direct appeal (PageID.91); however, Petitioner asserts that no such packet was included with the Letter. As a result, he claims that he missed the fifty-six day deadline for filing an appeal to the Michigan Supreme Court. Notably, the Michigan Appellate Assigned Counsel System (MAACS) investigated the matter and concluded that no clear violation of the rules governing appellate counsel procedures occurred in this case. PageID.88-89, 95. Based on this information, Petitioner has not established that his appellate attorney performed deficiently.

Even if Petitioner had shown that his appellate counsel had performed deficiently by failing to inform him about appealing to the Michigan Supreme Court, he has not demonstrated that he suffered any prejudice by not being able to file this appeal. In his direct appeal to the Michigan Court of Appeals, Petitioner made the following arguments:

> Issue I: Does Due Process entitle the Defendant-Appellant to withdraw his plea when it was not voluntary and was in fact coerced by the totality of the circumstances and loss of confidence caused by trial counsel's failure to adequately meet with him to prepare for trial?
>
> Issue II: If the Court is not willing to allow the plea withdrawal on the existing record, should the case be remanded for an evidentiary hearing to determine whether or not Defendant received effective assistance of counsel because many of the Defendant's claims are not part of the record even though he has sworn them in an affidavit?

PageID.460. The appellate court denied these claims. PageID.454. Moreover, Petitioner raised these issues in his motion for relief from judgment as well, and they were denied by the trial court, appellate court, and Michigan Supreme Court. PageID.491, 495. As a result, Petitioner has not shown that he was prejudiced by not being able to file these claims on appeal to the Michigan Supreme Court on direct appeal, as these claims were denied by every Michigan court on at least one occasion. Therefore, Petitioner has not demonstrated that the outcome of his appeal would have been different but for his appellate attorney's alleged deficient performance, and I recommend that this claim be denied.

Petitioner's second claim effectively raises two issues: (1) whether his plea was coerced, and (2) whether his trial counsel was ineffective in advising Petitioner about this plea. Each issue will be addressed individually.

With regard to the coerced plea claim, Petitioner asserts that his plea was not knowingly, voluntarily, or intelligently made; rather, he contends that he was forced to plead guilty because "he was convinced that his defense counsel was not prepared to go to trial." PageID.57. Petitioner states that he had this idea based on the fact that he met with his attorney on two or three brief occasions pending trial. PageID.58.

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is

aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 512 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 28-30 (1992).

Here, the plea agreement was reduced to a writing (PageID.254) that was presented to Petitioner, his attorney, the prosecutor, and the trial judge. The agreement was read into the record by the prosecutor at Petitioner's plea hearing:

> Defendant is charged with murder one, felony murder, home invasion first, felon in possession and felony firearm. The People would move at this time to amend count one to the offense of murder in the second degree. That is a felony punishable by life or any term of years. The People would ask in exchange for that to dismiss count two, the felony murder.
>
> Defendant will plead guilty to murder in the second degree, home invasion in the first degree, felon in possession of a firearm, felony firearm and acknowledge habitual offender second.
>
> There is a sentence agreement as follows. Defendant will serve two years in the prison consecutive with and preceding any other term of

imprisonment imposed for the felony firearm conviction. The defendant will serve a 40 year minimum sentence on murder in the second degree to be served consecutive to the felony firearm. Defendant then will commence to serve an eight year minimum sentence on the home invasion in the first degree. Home invasion is punishable by up to 20 years in the state's prison.

So that defendant will be tendering a plea of guilty to the charge murder two, home invasion one, felon in possession, felony firearm and habitual offender second. The sentences are agreed to between the parties as two years for felony firearm, a 40 year minimum on the murder two consecutive to the felony firearm, the eight year minimum is consecutive to the 40 year minimum on murder two and the two year felony firearm.

PageID.257-258.

      After the plea agreement was read into the record, the trial judge conducted the

plea colloquy and ultimately concluded that petitioner's plea of guilty was entered knowingly and

voluntarily:

Court: [Y]ou've heard the consequences of the [plea] agreement in terms of the sentence?

Petitioner: Yes.

Court: And that is an agreement that's been reached between you, your attorney and the prosecutor's office, you understand that?

Petitioner: Yes.

Court: I've indicated to the attorneys in private after I was advised of what the agreement was going to look like that I would probably go along with it.

Petitioner: Yes.

Court: I cannot foresee any reason why I would not go along with it. And if I decide not to go along with it, if I decide it's not severe enough, or I decide it's too severe, either side to the agreement, you or the prosecutor's office, would have the right to withdraw the plea

-10-

if I do not honor the agreement. In other words, I don't have to honor the agreement. But if I don't, you're entitled to withdraw your plea and have a trial.

Petitioner: Yes.

Court: You understand Mr. Terry is one of the most experienced attorneys in Genesee County who handles these types of cases.

Petitioner: Yes.

Court: And he has tried these cases. It's not a situation where he is timid or afraid to try a case. You saw how aggressive he is in Court, right?

Petitioner: Yes.

Court: And in the end, it has to be your decision and not his decision.

Petitioner: Yes.

Court: And is it your decision to accept this agreement?

Petitioner: Yes.

Court: If you plead guilty to these charges, Mr. Smith, the trial will stop today and you will not have a jury trial. You understand that?

Petitioner: Yes.

Court: And you are giving up certain rights that you would have at that trial and you've heard them during the course of our proceedings yesterday, but I want to go over them with you and make sure you understand what rights you are giving up.

You understand there won't be a jury trial. So, you're giving up your right to have a jury trial?

Petitioner: Yes.

Court: You heard the discussions yesterday about a person charged with a crime is presumed to be innocent and that presumption continues throughout the trial until the jury decides that there is

-11-

sufficient evidence to overcome that presumption. If you plead guilty, you're giving up your right to be presumed innocent. Do you understand that?

Petitioner: Yes.

Court: You're giving up your right to require the prosecutor to prove that you're guilty beyond a reasonable doubt. We spent a lot of time talking about that yesterday.

You don't have to do anything. The prosecutor must prove each element of the offenses beyond a reasonable doubt. However, if you plead guilty, the prosecutor no longer has that burden. You understand that?

Petitioner: Yes.

Court: You're giving up your right to have the witnesses against you appear at trial. There won't be any witnesses. There won't be anyone who will be testifying in this case. And you're giving up your right to have those witnesses come to Court. Do you understand that?

Petitioner: Yes.

Court: You're giving up your right through Mr. Terry to cross-examine these witnesses. Mr. Terry would have the opportunity to question all of the witnesses that appeared in this case, to bring out points that would be favorable to you. But there won't be any trial. There won't be any cross-examination. So, you're giving up your right to question those witnesses. Do you understand that?

Petitioner: Yes.

Court: If there were witnesses who could help you, but who may be reluctant to appear in Court, you would have the right to ask me to order these individuals to come to Court and give testimony. So, you have the right to have the witnesses you want to present your defense to come to Court. Do you understand that?

Petitioner: Yes.

. . . .

-12-

Court: You're giving up your right to remain silent. We talked about that yesterday too. You have the absolute right not to say anything. You don't have to do anything. No one can force you to give testimony at trial. But by pleading guilty, you won't be remaining silent. So, you're giving up your right to remain silent about these charges. Do you understand that?

Petitioner: Yes.

Court: You're giving up your right, should you go to trial and decide not to testify at trial, I would tell the jury – there's a jury instruction that says the defendant has an absolute right not to testify, you're not to consider that fact in any way in deciding this case. You're giving up your right to that instruction and you're giving up your right to have the jury told that. Do you understand?

Petitioner: Yes.

Court: You're also giving up your right to testify at your trial. Like anybody else, you have the right to be put under oath, answer the questions put to you by Mr. Terry, answer the questions that would be put to you by Mr. Riggs and present your case before the jury through your testimony.

By pleading guilty, you're giving up that right. There won't be a trial. You're giving up your right to testify before the jury at your trial. Do you understand that?

Petitioner: Yes.

Court: Mr. Terry touched on this. I want to make sure you understand. There are two ways to appeal your case. There's an appeal by right and there's an appeal by leave.

An appeal by right attaches or you have an appeal by right if you are convicted after a trial, either by a Judge or by a jury. But anytime you're convicted after a trial, you have an automatic right to appeal your case to the Court of Appeals which is the court above this Court. You can give up that right but they can't take it away from you. It's an absolute right.

When a person pleads guilty, you don't have that automatic right to an appeal. What you have is an automatic right to ask the Court of

-13-

Appeals for permission to hear your case. And I'm not telling you they never grant permission under these circumstances, but I can tell you with some assurance that by pleading guilty you are seriously hurting your chances to ever have another court review this case. Do you understand that?

Petitioner: Yes.

Court: Do you have any questions about any of the rights that I just explained to you?

Petitioner: No.

. . . .

Court: Okay. Is there anything that you believe is part of this agreement that's not in writing in the agreement?

Petitioner: No.

. . . .

Court: The charge in count one, Mr. Smith, is the charge of first degree premeditated murder. That charge is being amended to second degree murder.

. . . .

For second degree murder, the first element is the defendant . . . caused the death of Nohl William O'Connor, that is that Mr. O'Connor died as a result of . . . being shot by you. That's the first element.

The second element is that you had one of these three states of mind. You either intended to kill, you intended to do great bodily harm to Mr. O'Connor, or you knowingly create a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

. . . .

So, the amended charge in count one, Mr. Smith, would read as follows. That on or about November 13, 2009, in Mt. Morris

-14-

Township, Genesee County. Michigan, you did murder Nohl William O'Connor. Do you understand that charge?

Petitioner: Yes.

Court: How do you plead to that charge?

Petitioner: Guilty.

Court: The charge now in count two is being dismissed as part of this agreement.

So, the next charge is the charge in count three which has to do with home invasion in the first degree.

. . . .

So, the charge would read as follows. On or about November 13, 2009, [in] Mr. Morris Township, Genesee County, Michigan, you did break and enter a dwelling located at 1475 Tremont, and when I say dwelling, a place where somebody lives, and while entering, present in, or exiting, you did commit a larceny, that is you stole something, and while entering, present in, or exiting, you were armed with a handgun which is a dangerous weapon and that while you were entering, present in, or exiting Nohl William O'Connor was lawfully present. Do you understand what the charge is?

Petitioner: Yes.

Court: How do you plead to that charge?

Petitioner: Guilty.

Court: The charge in count four has to do with the fact that because of your earlier conviction before Judge Fullerton, you were not entitled to possess, have in your possession, in your car, in your hand, in your pocket, a firearm. You understand that?

Petitioner: Yes.

Court: All right. And that charge would read as follows. That on or about November 13, 2009, in Mt. Morris Township, Genesee County, Michigan, you did possess or use a firearm when ineligible to do so

-15-

because you had been convicted of larceny in a building which is one of the specified felonies for this crime and you had not regained eligibility to possess a firearm. That's the charge of being a felon in possession of a firearm. Do you understand the charge?

Petitioner: Yes.

Court: How do you plead?

Petitioner: Guilty.

Court: The charge in count five has to do with the statute that says if you commit a felony while you're in possession of a firearm, it's a separate crime. It's called felony firearm.

. . . .

So, that charge would read as follows. That on or about November 13, 2009, [in] Mt. Morris Township, Genesee County, Michigan, you did carry or have in your possession a firearm, that is a handgun, at the time you committed or attempted to commit either the felony of second degree murder, the felony of home invasion in the first degree, or the felony of being a felon in possession in a firearm. Do you understand the charge?

Petitioner: Yes.

Court: How do you plead?

Petitioner: Guilty.

. . . .

Court: Is it your choice to plead guilty?

Petitioner: Yes.

Court: Has anyone threatened you?

Petitioner: No.

Court: Other than the promises that are in writing that are on that signed agreement, have there been any other promises made to get

-16-

you to plead guilty?

Petitioner: No.

Court: Has anyone used any undue influence against you that is causing you to plead guilty?

Petitioner: No.

Court: Are you pleading guilty freely and voluntarily?

Petitioner: Yes.

. . . .

Court: Have you taken any medications, any drugs or any intoxicants that are affecting you this morning?

Petitioner: No.

Court: Have you understood my questions?

Petitioner: Yes.

Court: Do you feel that you've had an adequate time to discuss your situation with Mr. Terry and come to this decision?

Petitioner: Yes.

. . . .

Court: I do find Mr. Smith's pleas are made voluntarily, with understanding, there's been no undue influence, compulsion or duress, no promises have been made to him except as stated on this record or as contained in the written plea agreement.

I further find that the offenses to which he entered his pleas, one count of second degree murder, one count of home invasion in the first degree, one count of being a felon in possession of a firearm and one count of felony firearm, that those offenses were in fact committed. Mr. Smith is guilty of those offenses and his pleas are accurate.

-17-

> I also find that he understands the rights he's giving up by virtue of his pleas. He understands the sentencing agreement and the consequences of that agreement. I do accept his guilty pleas.
>
> . . . .
>
> Mr. Riggs: You are looking at a mandatory two [years] for the felony firearm, a minimum 40 years on the murder two, the Judge has to set a maximum of at least 60 years to satisfy the two-thirds rule, a minimum of eight years on the home invasion, he has to set the maximum at 20 years. All of those sentences are to be served consecutive. You understand that?
>
> Petitioner: Yes.

PageID.264-279, 293-295. The transcript of Petitioner's plea hearing shows that the plea was made knowingly, voluntarily, and intelligently because Petitioner was made aware of the direct consequences of his plea. *See Garcia*, 991 F.2d at 326; *see also King*, 17 F.3d at 153-54 (noting a voluntary and intelligent plea is when a person knows the direct consequences of the plea; i.e., the maximum and minimum (if any) number of years that could be imposed).  The trial court's finding that Petitioner's plea was knowingly, voluntarily, and intelligently made is "entitled to a presumption of correctness, which Petitioner has failed to overcome by clear and convincing evidence." *Cota v. Metrish*, No. 1:05-CV-477, 2008 WL 2325610, at *9 (W.D. Mich. June 2, 2008) (citing 28 U.S.C. § 2254(e)(1)).

Nevertheless, despite the thoroughness of his plea colloquy, Petitioner contends that his plea was not knowingly or intelligently made, and that it should be withdrawn because it is an illusory plea. Petitioner asserts that the plea is illusory because the prosecution's offer to drop the charge of first degree murder to second degree murder was meaningless, as Petitioner

could not be charged with both of those crimes under the law of double jeopardy.[1] PageID.60-61. In addition, the plea required that Petitioner plead guilty to four crimes with consecutive sentences, which (when added together), result in a total sentence of 53 to 100 years—effectively a life sentence according to Petitioner, which is what he would have received had he been convicted of first degree murder at trial. PageID.59.

"An illusory plea bargain is one which offers no real benefit to the defendant." *Johnson v. Michigan Parole Bd.*, No. 2:11-CV-11674, 2012 WL 6853535, at *12 (E.D. Mich. Dec. 6, 2012) (citing *United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000)). "If a prosecutor's promise is illusory, then a plea is involuntary and unknowing." *Wolfe v. McKee*, No. 1:12-CV-600, 2015 WL 1275416, at *12 (W.D. Mich. Mar. 19, 2015) (citing *Randolph*, 230 F.3d at 250-51). A plea is *not* an illusory plea so long as the defendant received a tangible, real benefit in consideration for the plea. *Johnson*, 2012 WL 6853535, at *12 (citations omitted).

Here, Petitioner received real benefits in exchange for his guilty pleas—the most important benefit being that he avoided a life sentence without parole when he pleaded guilty to second degree murder, which thereby dismissed the first degree murder charge. *See* Mich. Comp. Laws § 750.316 (First Degree Murder) (noting a sentence of life imprisonment without parole); *cf.* Mich. Comp. Laws § 750.317 (Second Degree Murder) (noting a sentence of any term of years or life with the possibility of parole). Moreover, Petitioner indicated on the record at his plea hearing that he understood the potential term of imprisonment for each offense, and that his sentences would run consecutively. *See Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 2007)

---

[1]Notably, the record indicates that Petitioner could never have been convicted of first degree and second degree murder because second degree murder was a lesser included offense under the first degree murder charge.

("A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true."). Therefore, Petitioner has not demonstrated that his plea was illusory or should otherwise be withdrawn.

With regard to Petitioner's next claim, he asserts that his trial counsel was ineffective because counsel was not prepared to go to trial. PageID.58-59. The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Here, during Petitioner's plea hearing, Petitioner expressly acknowledged that his trial attorney was well-prepared and ready to proceed to trial:

> Defense Counsel: Mr. Smith, you and I have met and talked about trial strategies in your case, is that correct?
>
> Petitioner: Yes.
>
> Defense Counsel: And you and I have discussed the witnesses and the evidence that I anticipate will be brought before the jury in this case, correct?
>
> Petitioner: Yes.
>
> Defense Counsel: In fact you and I began picking this jury. And throughout our discussions, you and I have – I've expressed my

-20-

concerns about how this jury may come back with a verdict of counts one and two at the time, which would have been either first degree murder or felony murder, correct?

Petitioner: Correct.

Defense Counsel: And I anticipated – I indicated to you that I thought second degree murder may be something that the jury could come back with but I said it would be a difficulty and it would be a fight and I thought from day one that the result should be a second degree murder plea, correct?

Petitioner: Uh-huh (affirmatively).

. . . .

Defense Counsel: And I've given you that advice, but I've also been prepared for trial. You and I have discussed it. You've seen my trial preparation. We've discussed the case at length about our defenses and what we planned on doing, correct?

Petitioner: Yes.

Defense Counsel: Okay. And today I've – and there hasn't been an offer on this case. So, we've been prepared. Now there's an offer made. And I discussed the ramifications, the sentencing agreement, and I've discussed that this is something that in my advice that you should probably take.

But I'm still prepared to go to trial for you. You certainly have every right to have your day in trial.

Petitioner: Yes.

Defense Counsel: And you've expressed an interest, one, to take this deal and, two, you didn't want to put the family members through this again, correct? You didn't want young Tyler testifying? You didn't want to put him through that, correct?

Petitioner: Yes.

Defense Counsel: And you certainly don't want your mother to sit through this proceeding? And then certainly the family members, you

-21-

don't want them to have to go through this, correct?

Petitioner: Yes.

Defense Counsel: All right. So, it was your decision to take this offer, correct?

Petitioner: Yes.

Defense Counsel: Do you have any questions of me on any of the rights that you have –

Petitioner: No.

Defense Counsel: – that you and I have discussed, I've told you and I'm sure the Judge is going to go through them as well?

Petitioner: No.

Defense Counsel: Okay. And you understand – and I know that you've been talking to some individuals upstairs in the cells. You understand that you have an absolute right to appeal this case if you go to trial and the jury convicts you. However, you're going to lose that absolute right to an appeal and you're going to have to have an application for leave to appeal. And I've explained that's asking the Court of Appeals to hear your case . And in my opinion and in my experience, I've typically watched this kind of stuff, it's rare that they accept that appeal. I'm not saying that they won't. But I'm sating that it's difficult for them to – it's rarely accepted that they accept the appeal. You understand that you're giving up that right as well, right?

Petitioner: Yes.

PageID.261-264. Based on this record, it is clear that Petitioner did not believe his trial attorney

was unprepared for trial. Moreover, Petitioner expressly stated at his plea hearing that he was not

being unduly influenced or forced to plead guilty. PageID.277-278.  Based on this information,

Petitioner has not shown that his attorney was unprepared for trial, or that he would have chosen

to go to trial but for his attorney's allegedly deficient performance. *Hill*, 474 U.S. at 59 (noting

prejudice requires a defendant to show there is a reasonably probability that he would have gone to trial rather than pleading guilty but for counsel's errors). Therefore, I recommend that this claim be denied.

Overall, I conclude that all of Petitioner's claims are without merit.  Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  I examined each of Petitioner's claims under the *Slack* standard and conclude that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, I recommend that a **CERTIFICATE OF APPEALABILITY BE DENIED** as to each issue raised by Petitioner.

For the same reasons I recommend dismissal of this action, I certify that any appeal by Petitioner would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, it is recommended that any application by Petitioner for leave to proceed *in forma pauperis* on appeal be **DENIED**.

In summary, I recommend that Petitioner's habeas claims, filed pursuant to 28 U.S.C. § 2254, be **DISMISSED WITH PREJUDICE**.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  __7/25/2016_____                              _/s/ *Timothy P. Greeley*_____
                                                                      HON. TIMOTHY P. GREELEY
                                                                      UNITED STATES MAGISTRATE JUDGE